UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(West Palm Beach Division)

HAG, LLC., d/b/a Heart Attack Grill, an Arizona corporation, and Jon Basso, an individual

       Plaintiffs,

v.

B & I Enterprises, LLC. d/b/a Heart Stoppers a/k/a Heart Stoppers Sports Grill, a Florida corporation, and Ignazio Lena, an individual, and Robert Kutnick, an individual

       Defendants.

_____/

CASE NO:

# 10-CV-80127-Marra-Johnson

FILED by ___*VT*___ D.C.
ELECTRONIC

**Jan. 26, 2010**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## VERIFIED COMPLAINT

Plaintiffs, HAG, LLC., d/b/a Heart Attack Grill, an Arizona corporation, and its president, Jon Basso, an individual (hereinafter "HEART ATTACK GRILL") hereby files this complaint against Defendants B & I Enterprises, LLC d/b/a Heart Stoppers a/k/a Heart Stoppers Sports Grill, a Florida corporation and Ignazio Lena, an individual, and Robert Kutnick, an individual, (herein collectively "HEART STOPPERS") and states as follows:

### JURISDICTION AND VENUE

1.     This is an action for (i) trade dress infringement pursuant to Federal Trademark Law, Lanham Act Section 43(a)(15 U.S.C. §1125(a)); (ii) trademark infringement of the federally registered mark HEART ATTACK GRILL (Fed. Reg. No. 3,128,169 for restaurant services) under Lanham Act Section 32(15 U.S.C. §1114) by HEART STOPPERS SPORTS

1

GRILL, among others; (iii) trademark infringement relating to unauthorized use of HEART ATTACK GRILL's unregistered marks (FLATLINER, red heart with an EKG symbol, nurse character on a red ball background with an EKG logo); (iv) federal trademark dilution under the Federal Trademark Dilution Act, 15 U.S.C. sec. 1125(c) ("FTDA") because HEART STOPPERS is tarnishing HEART ATTACK GRILL's image, in that HEART STOPPERS is a "poor cousin" of the higher quality hamburger restaurant and grill, and HEART STOPPERS is blurring the fame of HEART ATTACK GRILL and its medically themed hamburger restaurant and grill; (v) common law unfair competition; (vi) cybersquatting under the ACPA (Anticybersquatting Consumer Protection Act, 15 U.S.C. sec. 1125(d)) due to the unauthorized registration and use of the domain www.TheHeartStopper.com in light of HEART ATTACK GRILL's federally registered trademark; (vii) Lanham Act §43(a) violations, namely, false designation of origin and false association between the HEART STOPPERS restaurant and HEART ATTACK GRILL's restaurant; and (viii) unfair competition law under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. 501.201.

    2.    Jurisdiction is expressly conferred on this Court by 15 U.S.C. §1121 and 28 U.S.C. §1338(a). This Court also has jurisdiction over all other claims herein in accordance with 28 U.S.C. §1332(a) because this is an action between citizens of different states and the matter in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs. This Court has supplemental jurisdiction over state law claims, pursuant to 28 U.S.C. §1367, as Plaintiffs' Florida statutory and common law claims are substantially related to the claims within this Court's original jurisdiction and the facts are inextricably related. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because HEART STOPPERS is

located in Delray Beach, Florida, and the individual Defendants reside within the Court's jurisdiction, that is, within the Southern District of Florida.

## THE PARTIES

3.     Plaintiff HAG, LLC., d/b/a Heart Attack Grill, is an Arizona limited liability company having a principal place of business at 6185 W Chandler Blvd, Chandler Arizona, 85226.

4.     Plaintiff Jon Basso is president of HAG, LLC and owner of the federally registered marks.  He resides in Scottsdale, Arizona.

5.     Defendant B & I Enterprises, LLC. d/b/a Heart Stoppers a/k/a Heart Stoppers Sports Grill, is a Florida corporation having a place of business at 110 Linton Blvd, C-3, Delray Beach, Florida, 33444.

6.     Upon information and belief, Defendant Ignazio Lena is a resident of Boca Raton, Florida. Upon information and belief, Lena is the co-owner of HEART STOPPERS and Lena registered the accused web site domain www.theheartstopper.com. Upon information and belief, Lena directs, actively participates in, controls, and benefits from the business of HEART STOPPERS. Upon information and belief, Lena directed, actively participated in, controlled and benefitted from the conduct of HEART STOPPERS as alleged in this Complaint. In addition, Lena's conduct was in furtherance of HEART STOPPERS' goals, inured to the benefit of HEART STOPPERS, and was within the course and scope of Lena's employment or agency relationship with HEART STOPPERS.

7.     Upon information and belief, Defendant Robert Kutnick is a resident of Delray Beach Florida. Kutnick is the Managing Member and co-owner of B&I Enterprises, LLC. d/b/a HEART STOPPERS. Upon information and belief, Kutnick directs, actively participates in,

controls, and benefits from the business of HEART STOPPERS. Upon information and belief, Kutnick directed, actively participated in, controlled and benefitted from the conduct of HEART STOPPERS as alleged in this Complaint. In addition, Kutnick's conduct was in furtherance of HEART STOPPERS' goals, inured to the benefit of HEART STOPPERS, and was within the course and scope of Kutnick's employment or agency relationship with HEART STOPPERS.

### FACTS RELATIVE TO ALL COUNTS

8.      HEART ATTACK GRILL has operated its unique medically themed restaurant since 2005.

9.      HEART ATTACK GRILL utilizes a very distinctive trade dress which includes, among other things: (a) a medically themed hamburger grill and restaurant with high caloric food products including a restaurant name that connotes a catastrophic medical condition, namely "HEART ATTACK GRILL" (see Reg. No. 3,128,169); (b) burger names using aggressive, heart condition or heart attack style medical terms, including SINGLE BYPASS BURGER, DOUBLE BYPASS BURGER, TRIPLE BYPASS BURGER and the signature QUADRUPLE BYPASS BURGER; (c) other foods branded with cardiac or heart condition names such as FLATLINER fries; (d) wheel chair service for restaurant patrons; (e) waitresses dressed as nurses; (f) an owner-operator (Jon Basso) dressed in medically themed clothes such as a lab coat with a stethoscope; (g) all customers are referred to as patients, including being attired in hospital gowns and hospital style wrist bands listing the patron's order and wrapped around the patron's wrist; (h) spiky heart beat pulse (an EKG design) on HEART ATTACK GRILL's web site advertising the medically themed restaurant and on branded merchandise displayed throughout the restaurant; (i) interior signage having medically themed statements such as a large "health" warning sign as one enters the establishment; (j) an offer of free food to anyone

4

over 350 pounds, including the scale to weigh patrons; (k) a logo consisting of a shapely character nurse on a red ball background pierced by a spiky EKG symbol running therethrough, used on its website and displayed throughout the restaurant and on branded merchandise sold in the restaurant and on the Internet; (l) red heart logo with an EKG symbol on its web site advertising its restaurant services and in its restaurant and on branded merchandise; and (m) a medically themed, red and white restaurant decor. See attached Plaintiffs' Exhibit A and Plaintiffs' Exhibit B (herein "Pl. Exh't XX").

10.     Since 2005, HEART ATTACK GRILL has continuously used in interstate commerce the distinctive name and mark HEART ATTACK GRILL in connection with their restaurant business selling high caloric food products. Since 2007, branded HEART ATTACK GRILL merchandise has been sold in-house and on the Internet.

11.     Since 2005, HEART ATTACK GRILL has continuously used in interstate commerce the distinctive marks (i) SINGLE BYPASS BURGER, (ii) DOUBLE BYPASS BURGER, (iii) TRIPLE BYPASS BURGER and (iv) QUADRUPLE BYPASS BURGER in its restaurant and for prepared foods for consumption on and off the premises, namely, restaurant menu items in the nature of hamburger and cheeseburger sandwiches.

12.     Since 2005, HEART ATTACK GRILL has continuously used in interstate commerce the distinctive mark A TASTE WORTH DYING FOR in connection with its restaurant business and for its hamburger and cheeseburger sandwiches made-to-order for consumption on or off the premises.

13.     Since 2005, HEART ATTACK GRILL has continuously used in interstate commerce the distinctive mark FLATLINER in connection with its restaurant business and for its french fries.

5

14.     HEART ATTACK GRILL owns the following federal registrations for goods and services related to the restaurant (collectively herein after the "HEART ATTACK GRILL Marks") (see Pl. Exh't C):

| Registration No. | Mark | Date of Registration |
|---|---|---|
| 3,128,169 | HEART ATTACK GRILL | 08/08/06 |
| 3,146,924 | TASTE WORTH DYING FOR | 09/19/06 |
| 3,180,518 | SINGLE BYPASS BURGER | 12/05/06 |
| 3,137,271 | DOUBLE BYPASS BURGER | 08/29/06 |
| 3,180,519 | TRIPLE BYPASS BURGER | 12/05/06 |
| 3,180,520 | QUADRUPLE BYPASS BURGER | 12/05/06 |

15.     HEART ATTACK GRILL has sold over four (4) million dollars worth of products under its marks. HEART ATTACK GRILL and Jon Basso have devoted substantial time and effort to advertise, promote, and otherwise market their unique products and services to the general public under its marks throughout the United States, including the State of Florida, on the Internet and on television. Consumers interested in unique food establishments ("foodies") seek out the HEART ATTACK GRILL from all parts of the U.S. Long prior to the acts complained of herein, the HEART ATTACK GRILL marks became and still are famous in the U.S. and throughout the world.

16.     HEART ATTACK GRILL's national and worldwide recognition is established by its pervasive media presence, featured or discussed on the following media outlets, which often include appearances by Plaintiff Basso and his "nurse" waitress staff: CBS Sunday Morning News, Good Morning America, The Food Network, The Travel Channel (including the show

6

Extreme Pigouts and the show Top 101 Tastiest Places to Chowdown where Heart Attack Grill was ranked #27 in America), ABC's Dateline, Fox News Neil Cavuto, ABC's 20/20 with John Stossel, The Rush Limbaugh Show, The Geraldo Rivera Show, The Howard Stern Show, Inside Edition, Comedy Central, The Jimbo Hannon Show, The Jay Leno Show, Rachel Ray, The Doctors, The National Enquirer, Inc. Magazine, Entrepreneur Magazine, Paul Harvey, America In The Morning, Japanese Television, Pro Zeben's Taff Time (Germany), TF1 (France), Voice of America Television (China), Jay Thomas Show on Sirius, Maurice Boland show (Spain), and Telemundo News (Mexico), among others.  For example, see the following You Tube Clips www.youtube.com/watch?v=zbKRSYAuSNg and www.youtube.com/watch?v=KTKysI59HAw

17.     As a result of this extensive and expansive media recognition, HEART ATTACK GRILL has entertained and explored the possibility of expansion, including licensing and franchise opportunities for its unique medically themed hamburger restaurant and grill featuring high caloric food products. Defendants Ignazio Lena and Robert Kutnick, made specific inquiries for a franchise and/or licensing opportunity in Florida, beginning in December 2008. See Pl. Exh't D. After several exchanges of information and preliminary terms for the license, the parties ultimately could not agree on the terms of a trademark license.  No agreement was entered into and HEART STOPPERS was never authorized to use any elements of the HEART ATTACK GRILL trade dress or trademarks.

18.     Defendants Lena and Kutnick, with specific and personal knowledge of the widespread recognition and fame of HEART ATTACK GRILL goods and services among the relevant segment of the market, and upon information and belief, with the specific intent to exploit that recognition and fame, marketed and offered for sale a copycat, infringing medically themed restaurant with high caloric food products, namely Heart Stoppers Sports Grill. Upon

information and belief, HEART STOPPERS intend that their customers believe that their medical themed restaurant is sponsored, approved by or emanates from HEART ATTACK GRILL.

19.     On or about January 3, 2010, HEART ATTACK GRILL discovered that HEART STOPPERS was operating a medically themed hamburger grill and restaurant with high caloric food products which was identical to or substantially identical to HEART ATTACK GRILL's medically themed hamburger grill with high caloric food. Upon information and belief HEART STOPPERS opened its restaurant on or about December, 2009, that is, about one (1) month ago. Pl. Exh't E.

20.     Defendants' trade name "HEART STOPPERS" is an infringement of HEART ATTACK GRILL's federally registered trademark "HEART ATTACK GRILL."

21.     HEART STOPPERS tarnish, dilute and otherwise create further consumer confusion because of their indiscriminate, and non-consistent use of "Heart Stoppers Sports Grill," "Heart Stoppers" and "The Heart Stopper" as a restaurant name and a website domain name.

22.     HEART STOPPERS' unauthorized use of the accused trade dress and trademarks on "healthy" food menu choices tarnishes HEART ATTACK GRILL's trade dress and trademarks.

23.     HEART STOPPERS displays its infringing medically themed restaurant and infringing trademarks on its web site www.TheHeartStopper.com. See Pl. Exh't F.

24.     The accused trade dress and accused infringing marks of HEART STOPPERS's restaurant are shown in the attached interior photos (Pl. Exh't G), and are described in articles (Pl. Exh't H and J) and include: (a) medically themed restaurant with red and white color scheme

8

serving high caloric food products; (b) a logo design of a shapely nurse character next to a red heart with a EKG heartbeat symbol; (c) the use of wheel chairs and medical equipment as part of the decor of the medically themed restaurant (see wheel chairs and examination room light and scales to confirm "over 350 pounds"); (d) aggressively marketing and selling high caloric food products in the medically themed restaurant; (e) restaurant staff dressed in medical scrubs; (f) medical signage throughout the restaurant (see "MD" sign, see "emergency room" and "city morgue" signs); (g) patron's checks delivered in a first aid box; (h) food delivered on a cart with an IV bag attached; (i) defibrillators and dialysis and x-ray machines throughout the restaurant; (j) pill boxes as salt and pepper shakers; (k) bed pans as planters and (l) and eating contests for the largest hamburger served on the menu.

25.    HEART STOPPERS's web site (Pl. Exh't F) and menu (Pl. Exh't I) shows many of the aforementioned accused trade dress elements and trademark infringements and the following additional trademark/trade dress elements used to promote and sell Defendants' restaurant services, including: (l)[1] offer of free food to anyone over 350 pounds; (m) high caloric, over stuffed hamburgers; (n) infringing goods and food categories bearing confusingly similar marks:   Heart Dogs, Desserts to Die for, Flatliner chicken wings, Heart Attacker ½ Pounder burger, Heart Stopper 3 Pound Killer burger, and the Heart Attack Jack sandwich; and (o) other high caloric food products and categories carrying a medical theme including: Artery Cloggers, Death by Burger, Pediatric, Chilli Chest Pain Fries, Insane Fries ("Prepared by our blind surgeon this artery clogger will have you calling your Doctor for an appointment."), NICU (Nacho Intense Chips Unit), Killer Chicken Wings, Code Blue wings, V-Fib wings, and Code

---

[1] The alphabetic listing of accused trade dress and trademarks is carried forward from the previous paragraph.

Red wings, the Triple A Burger, Under the Knife sandwich, Second Opinion sandwich, R.I.P. sandwich, Trama Alert sandwich, and The Coronary sandwich.

26. HEART STOPPERS also offers its patrons free food if they weigh over 350 pounds and uses wheelchairs for its patrons and conducts eating contests just like HEART ATTACK GRILL.

## COUNT I

## SECTION 43(a) LANHAM ACT - TRADE DRESS INFRINGEMENT

27. Plaintiff realleges and incorporates the allegations set forth in paragraphs 1- 26 above.

28. This count arises under Section 43(a) of the Lanham Act (the Federal Trademark Act), 15 U.S.C. §1125(a).

29. Restaurant patrons and "foodies" recognize HEART ATTACK GRILL's unique medically themed hamburger restaurant grill with high caloric products as originating from HEART ATTACK GRILL due to its extensive media appearances in the U.S. and throughout the world. This recognition of HEART ATTACK GRILL's unique medically themed hamburger grill and restaurant in the marketplace further boosts the sales of HEART ATTACK GRILL's restaurant goods and services and medically themed or branded merchandise bearing the trademarks and trade dress of HEART ATTACK GRILL.

30. Particularly, HEART ATTACK GRILL's promotional activities and media appearances over the past five (5) years relative to its medically themed hamburger grill restaurant has established that restaurant patrons recognize the medically themed hamburger grill design and trade dress as originating from HEART ATTACK GRILL.

10

31.     By committing the acts alleged in paragraphs 1 - 30, HEART STOPPERS is trading off the goodwill and market reputation of HEART ATTACK GRILL with respect to HEART ATTACK GRILL's medically themed hamburger grill design and trade dress.  HEART STOPPERS's knock-off medically themed hamburger grill and restaurant featuring high caloric food is identical or substantially similar to HEART ATTACK GRILL's trade dress.  These acts by HEART STOPPERS violate Section 43(a) of the Lanham Act and are acts of unfair competition, deceptive advertising, trade dress infringement and constitute unfair trade practices.

32.     Specifically, HEART STOPPERS is trading off the goodwill and market reputation of HEART ATTACK GRILL by copying HEART ATTACK GRILL's trade dress since HEART STOPPERS' trade dress is either identical or substantially identical to HEART ATTACK GRILL's trade dress such that consumers, and retailers confuse, or are likely to confuse, HEART STOPPERS' hamburger grill trade dress with the genuine HEART ATTACK GRILL trade dress.

33.     HEART ATTACK GRILL has been damaged by these acts and is irreparably injured by the continuing acts of HEART STOPPERS.  Monetary damages cannot adequately compensate HEART ATTACK GRILL for the loss of or damage to its reputation.  HEART STOPPERS' unlawful conduct will continue to damage HEART ATTACK GRILL unless enjoined by this Court.

## COUNT II

### TRADEMARK INFRINGEMENT OF REGISTERED MARKS -15 U.S.C. §1114(1)

34.     HEART ATTACK GRILL realleges and incorporates the allegations set forth in paragraphs 1 - 33 above.

35.     This Count arises under Section 32 of the Lanham Act, 15 U.S.C.§1114(1), and relates to infringement of HEART ATTACK GRILL's federally registered marks.

36.     Plaintiff Jon Basso is the owner of the federal trademark registrations for the above-described trademarks.  See para. 14 for a list of marks.  HEART ATTACK GRILL uses the trade dress and the federally registered marks under the control and direction of its president, Jon Basso.

37.     Upon information and belief, HEART STOPPERS, with full knowledge of Plaintiffs' federally registered trademarks, have knowingly and willfully infringed upon HEART ATTACK GRILL's trademarks (see Pl. Exh't B) by using confusing similar marks in its HEART STOPPERS's enterprise. HEART STOPPERS' use of confusingly similar marks for its restaurant services and food products without the consent or authorization of HEART ATTACK GRILL, constitutes intentional trademark infringement. HEART STOPPERS' unauthorized use of HEART ATTACK GRILL's registered trademarks is likely to cause confusion and mistake in the minds of the consuming public, and in particular, falsely creates the impression that goods and services offered by HEART STOPPERS are authorized, sponsored, or otherwise approved by HEART ATTACK GRILL, when in fact they are not and have never been so authorized.

38.     HEART STOPPERS tradename, and use of menu items and food categories, including HEART DOGS, THE HEART ATTACKER ½ POUNDER, HEART STOPPER 3 POUND KILLER, and HEART ATTACK JACK all infringe on HEART ATTACK GRILL's federal trademark for HEART ATTACK GRILL (Fed. Reg. No. 3,128,169).

39.     HEART STOPPERS' use of a menu food category, namely DESSERTS TO DIE FOR, infringes on HEART ATTACK GRILL's federal trademark for A TASTE WORTH DYING FOR (Fed. Reg. No. 3,146,924).

12

40.     The good will and favorable reputation created by the use and media exposure of

HEART ATTACK GRILL's marks is a valuable asset belonging to HEART ATTACK GRILL

which does not lend itself to exact quantification but has substantial monetary value. The acts

complained of herein have caused HEART ATTACK GRILL harm and have damaged it, and

these complained of acts have the potential for inflicting substantially greater injury to HEART

ATTACK GRILL's trademarks and good will unless enjoined by the Court.

41.     HEART ATTACK GRILL has suffered and continues to suffer irreparable harm

as a result of HEART STOPPERS' conduct set forth above, including a lessening of the good

will residing in HEART ATTACK GRILL's trademarks.

42.     HEART STOPPERS will, unless preliminarily and permanently enjoined,

continue to act in an unlawful manner, to HEART ATTACK GRILL's irreparable harm. HEART

ATTACK GRILL does not have an adequate remedy at law to compensate it for the injuries

suffered and threatened as a result of HEART STOPPERS' conduct.

**COUNT III**

**TRADEMARK INFRINGEMENT (UNREGISTERED MARKS - LANHAM ACT § 43(A))**

43.     HEART ATTACK GRILL realleges and incorporates the allegations set forth in

paragraphs 1 - 42 above.

44.     HEART ATTACK GRILL has common law trademark rights and rights under

Lanham Act Section 43(a)(15 U.S.C. §1125(a)(use of a mark or symbol that causes confusion or

is likely to cause confusion) for various unregistered marks and for the unauthorized use of its

federally registered marks on goods other than those listed in its registrations including: (a) the

federally registered mark HEART ATTACK GRILL used on branded merchandise and

newsletters to foodies and patrons promoting high caloric food products (that is, goods and

13

services not within the scope of the federal registration); (b) the federally registered mark A TASTE WORTH DYING FOR used on branded merchandise (not listed in the registration); (c) the FLATLINER mark; (d) the heart-and-EKG symbol; and (e) the nurse character on a red ball background with a piercing EKG symbol running therethrough.  These marks are used as follows: (i) HEART ATTACK GRILL is used on a wide range of branded merchandise (t-shirts, sweat shirts, cups or mugs, water bottles, bags, cutting boards, and mouse pads); (ii) HEART ATTACK GRILL is used on newsletters to foodies and patrons promoting high caloric food products; (iii) A TASTE WORTH DYING FOR is used on the branded merchandise listed above; (iii) FLATLINER is used in connection with the sale of high caloric french fries sold in its restaurant (FLATLINER Fries); (iv) the heart - EKG symbol is used to promote restaurant services and the on-line sales of branded merchandise; (v) the nurse-ball-EKG logo is used in connection with restaurant services and branded merchandise. HEART ATTACK GRILL has used these unregistered marks in connection with its restaurant since 2005 and sold branded merchandise since 2007 continuously.  Its branded newsletter has been used to promote the goods and services continuously since those times.

     45.     HEART ATTACK GRILL sells its branded merchandise throughout the U.S. and in the State of Florida.  HEART ATTACK GRILL has patrons throughout the U.S. and in the State of Florida.  HEART ATTACK GRILL sends its newsletter to patrons, guests and other foodies (persons interested in different food genres) throughout the U.S. and into the State of Florida.  To keep patrons and foodies fully informed, HEART ATTACK GRILL sends Twitter and Facebook messages to patrons and foodies throughout the U.S. and in the State of Florida informing them of service and news about high caloric food products.

14

46.     HEART STOPPERS advertises and sells FLATLINER chicken wings, which constitutes trademark infringement and passing off in violation of the common law of the State of Florida.  HEART STOPPERS uses marks confusingly similar to HEART ATTACH GRILL's heart-EKG symbol and nurse-ball-EKG logo in connection with its restaurant services and take-out menus acting as flyer advertisements and newsletters, and, upon information and belief, merchandise.  These are acts of infringement.

47.     HEART ATTACK GRILL is being damaged by these acts.  HEART ATTACK GRILL does not have an adequate remedy at law, the damage caused by HEART STOPPERS is irreparable, and HEART ATTACK GRILL will continue to be damaged by HEART STOPPERS unless enjoined by this Court.

**COUNT IV**

**TRADEMARK DILUTION- 15 U.S.C. §1125(c)**

48.     HEART ATTACK GRILL realleges and incorporates the allegations set forth in paragraphs 1 - 47 above.

49.     As described earlier, HEART ATTACK GRILL and its president Jon Basso are the owners and senior users of the above-described marks, including the federally registered marks. Jon Basso controls and directs the use of the trade dress and the marks.

50.     The HEART ATTACK GRILL trademarks and trade dress are distinctive, unique, valuable, well-known and famous.

51.     HEART STOPPERS' conduct set forth above is likely to injure the reputation and fame of the HEART ATTACK GRILL marks and trade dress.

52.     Upon information and belief, HEART STOPPERS intentionally and knowingly misused HEART ATTACK GRILL marks and trade dress as described above and has diluted the

15

distinctive quality, fame and reputation of HEART ATTACK GRILL and its marks and trade dress, and has tarnished the image of HEART ATTACK GRILL and its marks and trade dress.

53. Upon information and belief, HEART STOPPERS willfully engaged in their illegal conduct with an intent to trade upon the reputation and good will of HEART ATTACK GRILL, and to cause dilution of the famous HEART ATTACK GRILL marks and trade dress.

54. HEART STOPPERS' use of the accused marks and trade dress causes blurring of HEART ATTACK GRILL's marks and trade dress by impugning the distinctiveness of the famous mark and trade dress identified above.

55. HEART STOPPERS' use of the accused marks and trade dress causes tarnishment of HEART ATTACK GRILL's marks and trade dress, harming the reputation of the famous marks and trade dress, by offering, for example, healthy food menu choices, among other things.

56. As a result of HEART STOPPERS' improper conduct and dilution of the HEART ATTACK GRILL marks and trade dress, HEART STOPPERS is in violation of Section 43(c) of the Lanham Act. HEART ATTACK GRILL has been damaged by these acts. HEART ATTACK GRILL has suffered, and is continuing to suffer, irreparable harm and damage as a result of HEART STOPPERS' activities alleged herein, including further dilution of its unique trade dress and trademarks, and tarnishment and blurring of its brand.

57. HEART STOPPERS will, unless preliminarily and permanently enjoined, continue to act in the unlawful manner complained of herein to HEART ATTACK GRILL's irreparable harm.

58. HEART ATTACK GRILL has no adequate remedy at law to compensate it for injuries suffered and threatened as a result of HEART STOPPERS' continuing improper conduct.

16

## COUNT V

## COMMON LAW UNFAIR COMPETITION

59.     HEART ATTACK GRILL realleges and incorporates the allegations set forth in paragraphs 1 - 58 above.

60.     HEART STOPPERS' acts of infringement using HEART ATTACK GRILL marks and trade dress, and the resulting confusion or likelihood of confusion, constitute acts of unlawful competition and unfair trade practice.  HEART STOPPERS is attempting to palm off its goods or services as those of Plaintiffs, and otherwise seeks to misappropriate and capitalize upon HEART ATTACK GRILL's fame and good will residing its respective marks and trade dress.

61.     HEART STOPPERS investigated HEART ATTACK GRILL'S trade dress and trademarks and attempted to license the same from Plaintiffs.  See Pl. Exh't D.  When HEART STOPPERS failed to obtain a license, it substantially copied Plaintiffs' trade dress and trademarks.  These are further acts of unfair competition.

62.     HEART ATTACK GRILL has suffered damage and continues to suffer damage and has suffered irreparable harm as a result of HEART STOPPERS conduct, including a false association between the restaurants, customer confusion, and a lessening of the good will and tarnishment of its reputation.

63.     HEART STOPPERS will, unless preliminarily and permanently enjoined, continue to act in the unlawful manner complained of herein. HEART ATTACK GRILL has no adequate remedy at law to compensate it for injuries suffered and threatened as a result of HEART STOPPERS' conduct.

## COUNT VI

## VIOLATIONS OF THE ANTICYBERSQUATTING CONSUMER

## PROTECTION ACT (ACPA) -15 U.S.C. § 1125(d)

64.     HEART ATTACK GRILL re-alleges and re-avers paragraphs 1 - 63 above, as if fully set forth herein.

65.     HEART ATTACK GRILL is the owner of statutory trademark rights and common law trademark rights, for the federally registered HEART ATTACK GRILL mark.

66.     HEART ATTACK GRILL is a recognized and known name throughout the restaurant industry and among consumers and foodies seeking restaurants featuring high caloric food products.

67.     HEART STOPPERS is the current registered owner of the domain name and web site known as "www.TheHeartStopper.com" (herein the "accused domain").

68.     The accused domain "TheHeartStopper.com" is confusingly similar to the federally registered HEART ATTACK GRILL mark (Fed. Reg. No. 3,128,169).

69.     HEART STOPPERS knew or should have known of the HEART ATTACK GRILL trademark prior to HEART STOPPERS' registration and use of the accused domain.

70.     Upon information and belief, the accused domain did direct and continues to direct consumers to a website showing and offering competing goods services. commentaries and articles found on the Internet (see Pl. Exh't. H and J). HEART ATTACK GRILL is damaged by the diversion of these Internet customers.

71.     Unless enjoined, HEART STOPPERS will continue to operate and use the accused domain name so as to unfairly compete with HEART ATTACK GRILL.

18

72.     HEART STOPPERS' acts of unfair competition include the rerouting of Internet traffic and customers away from HEART ATTACK GRILL's website (selling products and a newsletter and Twitter and Facebook messages to foodies) to HEART STOPPERS's website or other linked web sites, all to its benefit and HEART ATTACK GRILL' detriment.

73.     The registration and use of the accused domain, after it learned of HEART ATTACK GRILL's trademark, is an act of cybersquatting which confuses the public and diverts traffic away from HEART ATTACK GRILL's domain and website.

74.     HEART STOPPERS has damaged HEART ATTACK GRILL by usurping HEART ATTACK GRILL's trademark in the form of the accused domain name, all without the authorization of HEART ATTACK GRILL.

75.     HEART STOPPERS' actions constitute cybersquatting under the ACPA.   See Section 43(d) of the Lanham Act, 15 U.S.C. §1125(d).

76.     In registering, using, and continuing to traffic in this domain name, HEART STOPPERS has acted in bad faith and, upon information and belief, with the intent to either profit from the use of HEART ATTACK GRILL's mark and/or to deprive HEART ATTACK GRILL of the use of its trademark to its detriment.

77.     Upon information and belief, HEART STOPPERS' registration of the accused domain name was done willfully with bad faith intent, all without the consent of HEART ATTACK GRILL.

78.     Pursuant to 15 US,C. § 1125(d)(l)(C), HEART ATTACK GRILL is entitled to an order transferring the accused domain name from HEART STOPPERS to the HEART ATTACK GRILL.

19

79.     HEART ATTACK GRILL has been damaged by this cybersquatting. Pursuant to 15 U.S.C. § 1117(d), HEART ATTACK GRILL is entitled to its actual damages or an award of statutory damages of up to $100,000.00 for the registration and use of the accused domain that was wrongfully and in bad faith registered by HEART STOPPERS.

80.     HEART ATTACK GRILL anticipates that HEART STOPPERS will continue to act in bad faith and engage in similar activities in the future, unless enjoined.

81.     HEART ATTACK GRILL's remedy at law is inadequate.

## COUNT VII

## LANHAM ACT §43(a) VIOLATIONS

## (FALSE DESIGNATIONS OF ORIGIN, FALSE ASSOCIATION)

82.     HEART ATTACK GRILL re-alleges and re-avers paragraphs 1 - 81 above, as if fully set forth herein.

83.     The foregoing acts of HEART STOPPERS constitute violations of Section 43(a) of the Lanham, 15 U.S.C. §1125(a).

84.     With its use of its confusingly similar name HEART STOPPERS SPORTS GRILL, and the use of the other accused marks and trade dress, HEART STOPPERS falsely designates, associates and suggests to restaurant patrons, foodies and members of the public that HEART STOPPERS is affiliated, associated or sponsored by HEART ATTACK GRILL or is likely to be affiliated, associated or sponsored by HEART ATTACK GRILL.

85.     Upon information and belief, HEART STOPPERS offers its medically themed restaurant featuring high caloric food and associated branded merchandise services which are directed to patrons seeking HEART ATTACK GRILL.

20

86.   HEART   STOPPERS'   aforementioned   acts   are   false   and   misleading representations of fact.

87.   HEART STOPPERS' conduct has damaged HEART ATTACK GRILL and this conduct has caused and will continue to cause irreparable injury to HEART ATTACK GRILL, for which HEART ATTACK GRILL has no adequate remedy at law, unless enjoined by this Court.

## COUNT VIII

## VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

88.   HEART ATTACK GRILL realleges and incorporates the allegations set forth in paragraph 1 - 87 above.

89.   This claim arises under Florida's Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. §501.201 et seq., based upon the above alleged acts by HEART STOPPERS. HEART STOPPERS has violated FDUTPA §501.204 by using unfair methods of competition by: deceptively using and substantially copying the HEART ATTACK GRILL marks and trade dress; engaging in unfair and deceptive acts which diminish the value of goods and services sold and offered by HEART ATTACK GRILL; marketing HEART STOPPERS' products or services as if they were affiliated with, approved by, sponsored, or otherwise authorized by HEART ATTACK GRILL; passing off HEART STOPPERS' products to consumers as if they were HEART ATTACK GRILL's products and services; and misleading the public as to the nature and quality of HEART STOPPERS' products by improperly suggesting a relationship with HEART ATTACK GRILL .

90.   HEART ATTACK GRILL has suffered, and continues to suffer damage. HEART ATTACK GRILL has suffered irreparable harm and damage as a result of HEART

21

STOPPERS' conduct, including a lessening of the good will residing in the HEART ATTACK GRILL marks.

91.     HEART STOPPERS will, unless preliminarily and permanently restrained and enjoined, continue to act in a lawful manner complained of herein, to HEART ATTACK GRILL's irreparable harm.

92.     HEART ATTACK GRILL has no adequate remedy at law to compensate it for injuries suffered and threatened as a result of HEART STOPPERS' conduct.

**RELIEF SOUGHT**

WHEREFORE, Plaintiffs' respectfully request judgment in its favor and against Defendants holding:

I.      That Defendants, and all persons in active concert or participation with any of them, be enjoined and restrained from, in any manner, either directly or indirectly:

(1) Committing any act which constitutes trade dress infringement of HEART ATTACK GRILL's trade dress or using any of its trade dress elements or engaging in conduct likely to cause confusion, mistake or deception with respect to HEART ATTACK GRILL's trade dress or its products or services;

(2) Committing any act which constitutes trademark infringement of HEART ATTACK GRILL's registered or unregistered trademarks or which constitutes conduct likely to cause confusion, mistake or deception with respect to HEART ATTACK GRILL's trademarks;

(3) Making any statement or representation or performing any act which is likely to  lead the public or individual members of the public to believe that the Defendants are, in any manner, directly or indirectly, associated or connected with, or licensed, authorized, or approved by or on behalf of HEART ATTACK GRILL, or to believe that any products or services offered

22

for sale or distribution by Defendants are products or services offered by HEART ATTACK GRILL;

(4) Committing any act which constitutes conduct which is a false or misleading description of fact concerning the origin, sponsorship and/or approval of the Defendants' goods or, in commercial advertising or promotion, constitutes a misrepresentation of the nature, characteristics, and/or qualities of the Defendants' goods as the same relates to HEART ATTACK GRILL's goods or services;

(5) Committing any act which constitutes dilution of HEART ATTACK GRILL's trade dress or trademarks;

(6) Committing any act of unfair competition with respect to HEART ATTACK GRILL, its trade dress and trademarks; and

(7) Using any key words or sponsored advertising with HEART ATTACK GRILL's registered or unregistered trademarks or trade dress elements, or the use of other words or symbols which are likely to cause confusion, mistake or deception with respect to HEART ATTACK GRILL's trademarks or trade dress.

II.     Permanent injunctive relief prohibiting Defendants' trademark infringement, trade dress infringement, cybersquatting and acts of unfair competition.

III.     That Defendants be required to account to HEART ATTACK GRILL for any and all profits derived by them or any of them, and be required to compensate HEART ATTACK GRILL for all actual damages sustained by HEART ATTACK GRILL by reason of the acts of Defendants described herein.

IV.     That HEART ATTACK GRILL receive pre and post judgment interest.

V.     That Defendants be required to deliver up, for destruction:

23

(1) All promotional materials that show trademarks or trade dress identical to, substantially similar to, or are colorable imitations of HEART ATTACK GRILL's trademarks and trade dress;

(2) All signs, menus, marketing materials, ads, websites, promotional CDs, and brochures that are in the possession, custody or control of the Defendants that show trademarks or trade dress identical to, substantially similar to, or which are colorable imitations of HEART ATTACK GRILL's trademarks and trade dress.

VI.    That the Court enter an order commanding the transfer of the accused domain www.theheartstoppergrill.com from Defendants to HEART ATTACK GRILL, or its designee, pursuant to the ACPA, 15 U.S.C. §1125 (d).

VII.    That HEART ATTACK GRILL receive enhanced damages for willful violations of the Lanham Act.

VIII.    That HEART ATTACK GRILL be awarded statutory damages pursuant to the ACPA, 15 U.S.C. §1125 (d)(1), in an amount not less than $1,000.00 nor more than $100,000.00 for the bad faith registration and use and transfer of the accused domain.

IX.    That HEART ATTACK GRILL be awarded its attorneys fees, costs and expenses in this action.

X.    That the Court award HEART ATTACK GRILL such other and further relief as the Court may deem just and proper.

[space left blank]

24

**HEART ATTACK GRILL demands a jury trial.**

Dated: _1-26-2010_

Respectfully submitted,

By: _____

Robert C. Kain, Jr., Esq. (266760)
RKain@ComplexIP.com
Darren Spielman, Esq.  (10860)
DSpielman@ComplexIP.com
Kain & Associates, Attorneys at Law, P.A.
900 Southeast 3rd Avenue, Suite 205
Fort Lauderdale, Florida 33316
Telephone:    (954) 768-9002
Facsimile:     (954) 768-0158

cc: Eric Lee, Esq., counsel for Heart Stoppers w/encls.

\\srv1\datashare\RCK\CLIENTS\Heart-Attack(HAG)\Heart-Attack-v-Heart-Stopper\plead-Complaint-final.wpd

## VERIFICATION

Pursuant to Title 28, U.S.C. Section 1746, I declare under penalty of perjury, that I have

read the foregoing Verified Complaint and state that the facts alleged therein are true and correct

to the best of my knowledge and belief.

Executed this _____26th_____ day of January 2010.

_____
Jon Basso
Individually and as President of
HAG, LLC.