UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-80127-CIV-MARRA/JOHNSON

HAG, LLC, d/b/a HEART ATTACK GRILL,
LLC, an Arizona corporation, and JON BASSO,
an individual,

       Plaintiffs,

v.

B & I ENTERPRISES, LLC d/b/a HEART
STOPPERS a/k/a HEART STOPPERS SPORTS
GRILL, a Florida corporation, IGNAZIO LENA, an
individual, and ROBERT KUTNICK, an individual,

       Defendants.

_____/

**DEFENDANTS' RESPONSE IN OPPOSITION
TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CASE NO. 10-80127-CIV-MARRA/JOHNSON

## <u>TABLE OF CONTENTS</u>

<u>PAGE(S)</u>

TABLE OF CONTENTS ………………………………………………………………i

TABLE OF CITATIONS ……………………………………………………………...ii

INTRODUCTION ………………………………………………………………..1

FACTUAL BACKGROUND …………………………………………………………2

ARGUMENT…………………………………………………………………………...4

CONCLUSION ………..………………………………………………………...19

CERTIFICATE OF SERVICE ………………………………......................................19

L<small>EE</small> & A<small>MTZIS</small>, P.L.
A<small>TTORNEYS AT</small> L<small>AW</small>

## <u>TABLE OF CITATIONS</u>

<u>**CASES**</u>                                                                  <u>**PAGE(S)**</u>

*Ambrit Inc., v. Kraft, Inc.*,
   812 F.2d 1531 (11th Cir. 1986) ........................................................... 6, 12

*Aromatique, Inc. v. Gold Seal, Inc.*,
   28 F.3d 863 (8th Cir. 1994) ................................................................... 10

*Buca, Inc. v. Gambucci's, Inc.*,
   18 F. Supp. 2d 1193 (D. Kansas 1998) ........................................ 7, 8, 10, 17

*Church v. City of Huntsville*,
   30 F.3d 1332 (11th Cir. 1994) .................................................................. 5

*Conagra, Inc. v. Singleton*,
   743 F.2d 1508 (11th Cir. 1984) ............................................................... 12

*Dunkin' Donuts Franchised Restaurants, LLC v. Cardillo Capital, Inc.*,
   2007 WL 2209245 (M.D. Fla. July 30, 2007) ........................................... 14

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
   826 F.2d 837 (9th Cir. 1987) ......................................................... 6, 8, 10

*Gateway, Inc. v. Companion Products, Inc.*,
   384 F.3d 503 (8th Cir. 2004) .................................................................. 10

*Goddard, Inc. v. Henry's Food, Inc.*,
   291 F. Supp. 2d 1021 (D. Minn. 2003) ....................................................... 2

*Gulf Coast Commercial Corp. v. Gordon River Hotel Associates*,
   2006 WL 1382072 (M.D. Fla. May 18, 2006) ....................................... 14, 17

*HI Limited Partnership v. Winghouse of Florida, Inc.*,
   347 F. Supp. 2d 1256 (M.D. Fla. 2004) ...................................................... 8

*Homes & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*,
   598 F. Supp. 2d 1248 (M.D. Fla. 2009) ............................................ 14, 15, 17

*Immuno Vital, Inc. v. Golden Sun, Inc.*,
   49 F. Supp. 2d 1344 (S.D. Fla. 1997) ...................................................... 12

*In re Air Crash at Lexington, Kentucky, August 27, 2006*,
   2009 WL 1883996 (E.D. Ky. June 30, 2009). ............................................ 11

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

CASE NO. 10-80127-CIV-MARRA/JOHNSON

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*,
   456 U.S. 844 (1982) ................................................................................................. 10

*Marco's Franchising, LLC v. Marco's Italian Express, Inc.*,
   2007 WL 2028845 (M.D. Fla. 2007) ...................................................................... 12

*Michael Caruso & Co., Inc. v, Estefan Enterprises, Inc.*,
   994 F. Supp. 1454 (S.D. Fla. 1998) ....................................................................... 16

*Prufrock Ltd., Inc. v. Lasater*,
   781 F.2d 129 (8th Cir. 1986) ............................................................................ 2, 19

*Qualitex Co. v. Jacobson Products Co., Inc.*,
   514 U.S. 159 (1995) .................................................................................................. 9

*Ross Bicycles, Inc. v. Cycles, USA, Inc.*,
   765 F.2d 1502 (11th Cir. 1985) ............................................................................. 15

*Siegel v. LePore*,
   234 F.3d 1163 (11th Cir. 2000) ........................................................................... 4, 5

*Tally-Ho, Inc. v. Coast Community College Dist.*,
   889 F.2d 1018 (11th Circ. 1990) ........................................................................... 12

*Texas v. Seatrain Int'l, S.A.*,
   518 F.2d 175 (5th Cir. 1975) ................................................................................... 4

*Turtle Wax, Inc. v. First Brands Corp.*,
   781 F. Supp. 1314 (N.D. Ill. 1991) .......................................................................... 7

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
   505 U.S. 763 (1992) ............................................................................................. 6, 9

*United States v. Board of Education of Greene County, Mississippi*,
   332 F.2d 40 (5th Cir. 1964) ..................................................................................... 4

*United States v. Lambert*,
   695 F.2d 536 (11th Cir. 1983) ................................................................................. 4

*Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*,
   529 U.S. 205 (2000) ............................................................................................. 5, 8

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

Defendants B & I ENTERPRISES, LLC ("B & I"), IGNAZIO LENA ("LENA") and ROBERT KUTNICK ("KUTNICK") (collectively, "Defendants"), by their undersigned counsel, hereby submit their Response in Opposition to Plaintiffs HAG, LLC ("HAG") and JON BASSO's ("BASSO") (collectively, "HAG") Motion for Preliminary Injunction [DE 6].  For all the reasons set forth herein, the Defendants respectfully submit that HEART ATTACK GRILL's Motion for Preliminary Injunction must be denied in all respects.

## INTRODUCTION

The Defendants' medically themed family restaurant is decidedly different than HAG's concept.  HAG's theme is based on its exclusive sale of high fat, high caloric food, limited to less than ten menu items.  As BASSO has stated: "Essentially, it's nutritional pornography, it's so bad for you it's shocking."  (Ex. 7).[1]  Further, HAG utilizes provocatively dressed waitresses in tight-fitting custom nurse costumes to entice customers into its restaurant.  "The Heart Attack Grill opened [in 2005] with a Hooters-like formula of red meat and sexy waitresses."  (Ex. 7). Finally, HAG is a stand alone single location restaurant located in Chandler, Arizona, which is over 2,300 miles away from Delray Beach, Florida.

The Defendants' restaurant is a medically themed family restaurant serving over 60 menu items, including appetizer items, chicken wings, burgers, sandwiches, healthy food items, and children's items.  The idea for a medically themed restaurant came from LENA's background as a paramedic.  (Ex. 1, ¶¶ 6-8).  The Defendants' waitresses are dressed in lab coats purchased from a medical supply store and are not dressed in a manner that would be inappropriate for a family style restaurant.  The Defendants' design, layout, and decorations are also decidedly different from HAG's.  The Defendants' restaurant is located in a strip mall, has different tables,

---

[1] Exhibit references refer to Defendants' Appendix of Exhibits filed with this Response.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

has different decorations, has actual medical equipment decorating its walls, has a different color scheme and does not copy HAG's design layout.

"To allow [Heart Attack Grill] to protect its [medically themed restaurant] concept under Section 43(a) of the Lanham Act would allow it to appropriate the [medically themed restaurant] concept to the exclusion of all others. It would be ludicrous to suggest that in our free enterprise system, one producer and not another is permitted to take advantage of a marketing approach to enhance consumer reception of its product." *Prufrock Ltd., Inc. v. Lasater*, 781 F.2d 129, 132 (8th Cir. 1986) (citations omitted). In the restaurant business, trade dress law does not provide blanket protection for a concept. As stated in *Goddard, Inc. v. Henry's Food, Inc.*, 291 F. Supp. 2d 1021, 1041 (D. Minn. 2003) (citations omitted):

> "[A] design is legally functional and thus unprotectable if it is one of a number of equally efficient options open to competitors and free competition would be unduly hindered by according the design trademark protection." As a result, "trade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products."

The Defendants have not copied any of HAG's non-functional items. Further, the Defendants do not utilize any of HAG's registered trademarks. Finally, the concepts are decidedly different. Accordingly, HAG's Motion for Preliminary Injunction should be denied.

## FACTUAL BACKGROUND

In 2008, LENA and KUTNICK began having discussions about opening a restaurant in south Florida. (Ex. 1, ¶3). LENA has been in the restaurant business since he was a child. (Ex. 1, ¶4). When discussing concepts, LENA and KUTNICK decided upon a medically themed restaurant. (Ex. 1, ¶5). The idea for a medically themed restaurant came from LENA's experience in the medical field. (Ex. 1, ¶6). LENA was a State Certified paramedic who worked at the Delray and Broward trauma centers, has taught emergency life support and CPR classes to

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

doctors and nurses and thought that a medically themed restaurant would be a fun family theme. (Ex. 1, ¶7).  Also, since they planned on operating the business in the Delray Beach, Florida area, they thought that a medical theme would be interesting due to the large senior community in the area.  (Ex. 1, ¶9).  KUTNICK and LENA looked on the internet for other medically themed restaurants and noticed that there were a number of medically themed restaurants located in Florida, in Arizona, and throughout the world.  (Ex. 1, ¶10).  In conducting their research, they discovered HAG's restaurant located in Chandler, Arizona.  (Ex. 1, ¶11).

KUTNICK and LENA contacted the owner of HAG, BASSO, to find out more about his concept and whether it made sense to license the concept.  (Ex. 1, ¶12).  The discussions and communications with BASSO were minimal.  (Ex. 1, ¶13).  KUTNICK and LENA had one telephone conversation with BASSO wherein he discussed his concept.  (Ex. 1, ¶14).  BASSO described his concept as a high caloric restaurant serving only hamburgers and fries cooked in lard.  (Ex. 1, ¶15).  BASSO also described his provocatively dressed waitresses as being an enticement to customers.  (Ex. 1, ¶16).  BASSO was willing to license his concept, but would not agree to permit any changes to the concept, any changes to the menu, or any changes to the waitress' costumes.  (Ex. 1, ¶17).  KUTNICK and LENA decided that this was not a concept they were interested in and did not proceed any further.  (Ex. 1, ¶18).

KUTNICK and LENA then went about creating an entirely different concept by creating a family-oriented medically themed restaurant.  (Ex. 1, ¶19).  They created an extensive menu with more than 60 items, designed the layout of the restaurant with actual medical equipment utilized as decorations and obtained actual lab coats from a medical supply company for their waitresses.  (Ex. 1, ¶20).  The tables have wheelchair fittings on them so they look like rows of

wheelchairs, there is an eye chart in the bathroom, salt and pepper shakers are prescription bottles, and the entire restaurant is based on a medical theme.  (Ex. 1, ¶21).

The Defendants' medically themed restaurant is decidedly different from HAG's high caloric "a taste worth dying for" restaurant theme.  (Ex. 1, ¶22).  As the medical equipment comparison chart demonstrates, HAG has only a few medically related items, which are a corollary to its main theme of high caloric food cooked in lard.  (Ex. 1, ¶23 (Ex. 2).  The menu comparison chart demonstrates that the menu items are entirely different.  (Ex. 1, ¶24) (Ex. 3).  The decorations are also decidedly different. (Ex. 1, ¶25) (Ex. 6).  There are significant differences between the two restaurants.  (Ex. 1, ¶27) (Ex. 4) (Ex. 6).  Finally, the Defendants' restaurant targets a family-oriented and senior citizen clientele in Delray Beach, Florida.  (Ex. 1, ¶28).  The Defendants' customer base is not from Arizona.  (Ex. 1, ¶29).

## ARGUMENT

Traditionally, courts are hesitant to issue a preliminary injunction in all but the clearest cases.  As the Fifth Circuit noted in *United States v. Board of Education of Greene County, Mississippi*, 332 F.2d 40, 45-46 (5th Cir. 1964), "[t]here is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing of an injunction."  The Eleventh Circuit has also emphasized that "[b]ecause a preliminary injunction is 'an extraordinary and drastic remedy,' its grant is the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion."  *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citing *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983) (quoting *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975)).

In evaluating whether an injunction should issue, courts look to four factors, all of which

HAG fails to meet.  The four prerequisites for the issuance of a preliminary injunction are (1) substantial likelihood of success on the merits; (2) substantial threat of irreparable injury if the injunction were not granted; (3) that the threatened injury to plaintiff outweighs the harm an injunction may cause defendant; and (4) that granting the injunction would not disserve the public interest.  *Church v. City of Huntsville*, 30 F.3d 1332, 1341-42 (11th Cir. 1994).  As the movant, plaintiff caries the burden of persuading the court to issue a preliminary injunction.  *See Siegel*, 234 F.3d at 1176.

## I.  <u>HAG CANNOT PROVE PROTECTABLE TRADE DRESS.</u>

This is an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act.  There are two types of legally recognized trade dress under § 43(a):  Product design trade dress, also known as product configuration trade dress, and product packaging trade dress.  *See Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205 (2000).  Product design trade dress is distinguished from product packaging trade dress by whether the alleged trade dress makes the product more appealing or useful.  *Id*. at 213.  Whether the trade dress is for product design versus packaging is fact specific and turns on the purpose for which consumers obtain the product.  For example, the court in *Wal-Mart* explained that a Coke bottle would be product packaging to a consumer who obtained the bottle of Coke to drink the coke, but would be product design to a consumer who collected bottles and obtained the bottle of Coke for the bottle.  *See Id*. at 215.

Plaintiffs seek to protect both types of trade dress in this case.  They seek to protect their use of an attractive, all female wait staff, dressed and photographed in sexually revealing clothing, designed to lure young men into their restaurant.  Plaintiffs also seek to protect the HAG restaurant décor, which is product packaging trade dress.  *Id*. at 214-215; *Two Pesos, Inc.*

*v. Taco Cabana, Inc.*, 505 U.S. 763 (1992).  For the reasons explained below, the waitresses, including photographs of them, dressed in revealing clothing, which features their breasts and feminine figures, are HAG's product and the trade dress claimed in them is unprotectable, product design.  Further, the Plaintiffs' décor is functional and not subject to protection.

## A.    HAG Cannot Prove Protectable Trade Dress in the Restaurant Décor.

The Supreme Court in *Two Pesos* held that unregistered trade dress in a restaurant's "décor" can be protected if it meets the requirements of § 43 of the Lanham Act.  To prove infringement, HAG must prove that its trade dress is inherently distinctive or has acquired secondary meaning and is nonfunctional and that there is a likelihood of consumer confusion between the HAG trade dress and the Defendants' trade dress.  *Ambrit Inc., v. Kraft, Inc.*, 812 F.2d 1531, 1535 (11th Cir. 1986).

The HAG décor is too generic, as a matter of law, to be considered inherently distinctive. In *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 844 (9th Cir. 1987) the court held, as a matter of law, that Fuddruckers' alleged trade dress in its restaurants' décor and style of service was "not the sort of arbitrary or uncommon trade dress that might qualify as inherently distinctive."  *Id.* at 843-844.  The court described the trade dress as:

> Food preparation area is visible to customers; various food items are presented in glassed-in display cases; various food items are kept in bulk in the main part of the establishment in both packaged and unpackaged form; there are stacked cartons of beer, produce and other items in the patron area.  Iced tea is served out of a light-colored plastic 32 gallon container that looks suspiciously like a garbage can; patrons can help themselves to melted cheese, melted cheese with jalapenos, and sauerkraut out of large, black, round crocks; onions, lettuce and tomatoes are available precut at a large condiment bar that features cartons and bags of the same items uncut; salt and pepper are served in institutional-sized containers; ubiquitous two-by-four white tiles found on the walls, the bar, and the counters, neon signs, many mirrors, brown and white checked flooring and table cloths, brown director chairs and exterior yellow awnings; its bakery area is called "Mother Fuddruckers"; it uses its ceiling music system to call patrons at each table; customers are allowed to buy bones for their dogs, with the proceeds going

> to animal shelters; beer trays lined with paper are used as serving platters; a full bar; video games outside the restrooms; an ice cream display case with large containers to give a patio dining effect; French doors between dining rooms; large ceiling lamps; potted floor plants; black over-sized napkin holders stacked on top of each other; a stainless steel bin used to dispense iced beverages and ceiling fans.

*Id*. at 839-840.

HAG has asserted in this case that its trade dress must be inherently distinctive because no other restaurant has exactly the same combination of individual trade dress elements that they do.  If that was the test for inherent distinctiveness, then every trade dress would be inherently distinctive, because no competitive product exactly duplicates what someone else has done. *Buca, Inc. v. Gambucci's, Inc.*, 18 F. Supp. 2d 1193, 1203 (D. Kansas 1998).  The court in *Buca* held:

> a product or package feature is not inherently distinctive merely because there is no other product on the market that looks exactly the same . . . 'Presumably, it could be said about the trade dress of any new product that no competitive product combines precisely the same elements in its trade dress . . . However, that fact alone does not make the product's trade dress inherently distinctive.  Any other rule essentially would require a finding of inherent distinctiveness whenever a new product enters the market.

*Id*. citing *Turtle Wax, Inc. v. First Brands Corp.*, 781 F. Supp. 1314, 1321 (N.D. Ill. 1991).

The court in *Buca* found that the trade dress at issue was descriptive, and therefore, not inherently distinctive, because when viewed as a whole, the overall look of a Buca restaurant conveyed to the ordinary consumer an immediate idea of the ingredients, qualities or characteristics of the goods.  The court identified 22 different elements of the Buca trade dress such as the year round use of Christmas tree lights, the use of over 100 photos on the walls and the display of humorous and irreverent sayings on the walls.  *Buca*, 18 F. Supp. 2d at 1200. Some of the elements were typical of what you would find in an Italian establishment, such as Italian pennants and reproductions of Greco-Roman artwork.  When all of these were viewed

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

together, they bore a "fundamental relationship to the nature of the product, Southern Italian Food" and so were descriptive.  In *HI Limited Partnership v. Winghouse of Florida, Inc.*, 347 F. Supp. 2d 1256 (M.D. Fla. 2004), the court found that common restaurant items such as plates, paper towel spools, wood tables, a wood interior, sports memorabilia, artifacts displayed on the walls, and a wood interior "are far too typical of other restaurants, particularly the sports bar and grill genre, to provide any basis for a finding of infringement."  In *Fuddruckers, Inc.*, the court found that components used in the service of providing food to the consumer, such as an exposed grill, display cases, the use of white tile, self-serving condiment bar, institutional size salt and pepper shakers, ceiling fans, and displays are functional and not subject to trade dress protection. *Fuddruckers, Inc.*, 1984 WL 1473.

Just like the plaintiffs in *Fuddruckers, Inc.*, *Buca, Inc.* and *HI Limited Partnership* (Hooters) could not establish protectable trade dress in their restaurant décor, HAG cannot establish protectable trade dress.  In addition to the substantial differences between HAG's décor and the décor of the Defendants' restaurant, HAG's layout and design is no different than thousands of restaurants located throughout the country. HAG serves patrons at a counter, has an open counter to its cooking area, and utilizes the same functional design as commonly utilized. HAG's design is so generic, in fact, that it would be simple to convert the location to another restaurant without a significant effort.  Thus, HAG cannot establish the exclusive right to utilize its claim to trade dress.

## B.   HAG has not Established the Non-Functionality of its Waitresses Dressed in Sexually Revealing Clothing.

The party seeking to protect alleged trade dress has the burden of establishing its non-functionality.  *See Wal-Mart*, 529 U.S. at 214.  HAG has not met and cannot meet the burden in regard to their alleged trade dress in the HAG waitresses and uniform.  Trade dress is functional

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

if "it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159 (1995).  If the exclusive use of the [trade dress] . . . would put competitors at a significant non-reputation-related disadvantage," then it is functional.  *Id.*  "A design is legally functional and thus protectable if it is one of only a limited number of equally efficient options available to competitors and free competition would be unduly hindered by according the [trade dress] protection."  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992).

The "article" in this case are the HAG waitresses, either in person or in photographs, dressed as nurses in a way to feature their breasts and feminine figures.  Granting HAG the exclusive right to use attractive girls, both in person and in photographs, dressed in a way to feature their breasts and feminine figures, puts competitors in the same business at a significant non-reputation disadvantage.  HAG's use of tightly fitting nurse costumes is functional because it is essential to the role of providing a sexually titillating experiencing.  Moreover, HAG's promotion of its waitresses dressed in their uniforms is clearly "suggestive."  In *HI Limited Partnership*, 347 F. Supp. 2d 1256, the Court found, as a matter of law, that:  "The Hooters Girl is not entitled to trade dress protection because the evidence establishes to a legal certainty that the Hooters Girl is primarily functional."  HAG cannot prevent competitors from dressing their female wait staff in such clothing.

Dressing the female wait staff in nurse uniforms is one of only a limited number of ways that a medically themed sports bar and grill could dress its female wait staff to accomplish their purpose of enticing males and providing them with vicarious sexual recreation.  The photographs of barely dressed girls that are displayed throughout the HAG web site are functional because they are used to make HAG's restaurant more Playboy-like than restaurant-like.  The

photographs are part of what attracts the male patrons and are used to arouse their fantasies, not to serve as an arbitrary, source identifying feature.

**C.**   **HAG Cannot Establish Secondary Meaning**.

In order to establish trademark infringement for its non-functional trade dress items, HAG must establish a likelihood of confusion in consumers' minds as to the source of the product.  *Gateway, Inc. v. Companion Products, Inc.*, 384 F.3d 503, 507 (8th Cir. 2004) (citations omitted).   Since HAG's trade dress is not inherently distinctive, it must establish secondary meaning to satisfy the requirement that its trade dress is distinctive.

> In order to establish secondary meaning, the user of a mark, or, here, a dress, must show that by long and exclusive use in the sale of the user's goods, the mark has become so associated in the public mind with such goods that the mark serves to identify the source of the goods and to distinguish them from those of others.

*Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 870 (8th Cir. 1994) (citations omitted).  "The purpose of assessing whether or not there is secondary meaning is to determine the extent of good will and consumer recognition a restaurant has established through its trade dress in the relevant market." *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 1984 WL 1473 (D. Ariz. 1984). "If there is no secondary meaning to the trade dress, then the plaintiff suffers no harm under the policies of unfair competition." *Id*.

"To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature . . . is to identify the source of the product rather than the product itself." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844 (1982).  "Consumer surveys and testimony is generally the most persuasive and desirable evidence of secondary meaning." *Buca, Inc.*, 18 F. Supp. 2d at 1204 (citation omitted).

HAG has not provided consumer surveys or testimony to establish secondary meaning. HAG has instead cited to blog comments made on the internet as their sole support of actual

confusion.  Comments made on blogs are inadmissible hearsay absent live testimony.  *In re Air Crash at Lexington, Kentucky, August 27, 2006*, 2009 WL 1883996 (E.D. Ky. June 30, 2009).  Although a court may consider hearsay at the preliminary injunction stage, the source and credibility of anonymous blog statements is highly suspect.  Such statements could be made by representatives of the parties.  Since the comments are anonymous, the parties have no ability to cross-examine or even discover the source of the comments.  Further, since their authenticity has not been proven, such statements should not be considered by the Court.

Other than the anonymous blog postings, HAG has failed to present evidence of a likelihood of confusion.  HAG cannot establish secondary meaning.  HAG operates a single restaurant in Chandler, Arizona.  HAG is not famous throughout the United States as a medically themed restaurant.  In fact, the claimed publicity HAG received in various media outlets was the result of a complaint lodged against it by the Arizona Board of Nursing and the Center for Nursing Advocacy due to HAG's derogatory use of fake "nurses" and its menu items limited to high caloric food.   HAG's media attention is the result of its "high caloric" burgers and fries.  See www.youtube.com/heartattackgrill.   Therefore, at best, HAG may be famous, not as a medically themed restaurant, but as a restaurant selling only high caloric food that utilizes a derogatory nurse concept for its servers.  HAG places significant emphasis on its tightly dressed nurse theme, rather than an overall medical concept.   HAG cannot demonstrate secondary meaning to its claimed medically themed hamburger restaurant concept.

**D.      The Proximity of HEART ATTACK GRILL Establishes that there can be no Likelihood of Confusion Since the Two Restaurants do not Serve the Same or <u>Even Similar Marketplaces</u>.**

In addition to the foregoing, HAG will have difficulty establishing a violation of its trade dress by a restaurant over 2,300 miles away.  In this Circuit:

> The territorial extent of trademark protection is limited to those geographic areas in which a mark is actually used in commerce and a zone of reasonable future expansion.  "[U]nder common law principles, the senior user of a mark cannot monopolize markets that neither his trade nor his reputation has reached."  *J. McCarthy*, supra. § 26:1, at 284.  This "zone of natural expansion" doctrine provides the senior user with some limited "breathing space" in which to expand beyond its current actual use.

* * *

> If the senior user is static, and has restricted use to only one small area, such as one city, a good-faith junior user may expand into a nationwide use of the mark, subject only to an exception in the small area occupied by the senior use.  However, if the senior user has constantly expanded its business by the date of the junior user's adoption of the mark, and if distances are not great, it may be that the senior user is entitled to exclusive rights in a zone of natural expansion which includes the junior user's area, even though no actual sales have yet been made in that area by the senior user.

*Tally-Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1027-1028 (11th Circ. 1990); *see also Immuno Vital, Inc. v. Golden Sun, Inc.*, 49 F. Supp. 2d 1344 (S.D. Fla. 1997).

An important factor to be analyzed is the similarity of purchasers and retail outlets. *Conagra, Inc. v. Singleton*, 743 F.2d 1508 (11th Cir. 1984).  "Likelihood of confusion is more probable if the products are sold through the same channels to the same purchasers."  *Ambrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1541 (11th Cir. 1986).  Where two single restaurants were located only 34 miles apart, a material issue existed as to whether common consumers would travel the distance to purchase food.  *See Marco's Franchising, LLC v. Marco's Italian Express, Inc.*, 2007 WL 2028845 (M.D. Fla. 2007).

HAG has been in business since 2005.  HAG cannot establish that its trade reputation has reached Florida, let alone Delray Beach, Florida.  HAG has not expanded its business and has limited the use of its trade dress to one city in Arizona.  HAG's attempt to claim similar customers is unavailing.  HAG claims, without identifying any individuals, that it purportedly sells merchandise over the internet into Florida and that it has customers in Florida including

"foodies."  HAG has not established where these alleged customers live in Florida.  HAG has failed to demonstrate where it sends its newsletter.  HAG makes the unsubstantiated claim that "the market place for this genre of high caloric restaurant is nationwide, not local like many restaurants." (Motion at p. 12).  Finally, HAG makes the ridiculous assertion that customers may fly from Fort Lauderdale, Florida to Phoenix, Arizona to travel to its unique restaurant.

First, as discussed above, the Defendants' restaurant is not a high caloric restaurant, such as HAG's.  HAG recognizes this distinction in its Complaint wherein it claims that the Defendants' sale of "healthy" food "tarnishes" HAG's alleged trademarks.  (Compl. at p. 8).  The Defendants' restaurant markets itself and caters to a local crowd.  (Ex. 1, ¶30).  The Defendants do not advertise outside of the south Florida area.  (Ex. 1, ¶31).  Further, despite making various claims of promotion and sending newsletters, HAG has not identified any advertising it has done for its product in Florida.  HAG is soliciting a male crowd with its high caloric food and provocatively dressed waitresses.  HAG is clearly not seeking a family or senior citizen crowd as its limited high caloric menu and limited countertop-only seating is not conducive to a family type atmosphere.  Finally, HAG's ludicrous assertion that customers would pay $250-$400 to travel to Phoenix, Arizona to purchase a $25.00 meal demonstrates the futility of its argument.  HAG has not presented any evidence that any patrons have travelled from the Delray Beach, Florida area to its restaurant for the sole purpose of eating one its high caloric burgers.  Thus, HAG has completely failed to demonstrate that its products are sold through the same channels to the same purchasers.

## II.    HAG CANNOT ESTABLISH TRADEMARK INFRINGEMENT.

In order for HAG to establish trademark infringement, HAG

must show that "it owns the mark in question, that the defendant's mark is similar to or the same as the Plaintiff's mark, and the defendant's use of the mark is likely

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

to cause confusion among consumers."

*Dunkin' Donuts Franchised Restaurants, LLC v. Cardillo Capital, Inc.*, 2007 WL 2209245, *4 (M.D. Fla. July 30, 2007) (citation omitted).   The distinctiveness of a mark has been characterized as its 'tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous source.'"   *Homes & Land Affiliates, LLC v. Homes & Loans Magazine, LLC*, 598 F. Supp. 2d 1248, 1259 (M.D. Fla. 2009) (citation omitted). Descriptive marks are "generally considered weak and deserving of a narrow range of protection."   *Id*. at 1260 (citation omitted).   "A high degree of proof is necessary to establish secondary meaning for a descriptive term."   *Gulf Coast Commercial Corp. v. Gordon River Hotel Associates*, 2006 WL 1382072, *8 (M.D. Fla. May 18, 2006) (citation omitted).   HAG's alleged trademarks are clearly descriptive.   "Heart Attack Grill" and "a taste worth dying for" describe the nature of HAG's business.   It does not take much imagination to perceive that Heart Attack Grill is a restaurant selling food items.   Further, "a taste worth dying for" clearly describes the high caloric, excessive food items sold at HAG's restaurants.   Thus, these trademarks are descriptive and deserve narrow protection.

When determining the similarity of marks, "the court compares the marks and considers the overall impressions that the marks create, including the sound, appearance, and manner in which they are used."   *Id*. at 1262 (citations omitted).   Here, there is no similarity between the marks.   HAG utilizes "Heart Attack Grill" to describe its restaurant.   The Defendants do not utilize the name "Heart Attack Grill."   As the exhibits demonstrate, the Heart Stoppers name and logo is completely different from the "Heart Attack Grill" name and logo.   (Ex. 6).   Further, Heart Stoppers Sports Grill clearly describes the restaurant operated by the Defendants.   The menu items such as "heart dogs" describe specific menu items and are not similar to the

description of HAG's restaurant.  As to the menu section entitled "desserts to die for," HAG does not demonstrate that it utilizes its "a taste worth dying for" trademark in its menu.  Further, the term "desserts to die for" is a generic term utilized by hundreds if not thousands of restaurants and publications.  A simple google search generates 14.5 million hits for the term and demonstrates the widely used descriptive term "deserves to die for."  (Ex. 8).

### A.   Similarity of Sales Methods.

"'This factor takes into consideration where, how, and to whom the parties' products are sold.  While 'the parties' outlets and customer basis need not be identical, . . . some degree of overlap should be present.'"  *Homes & Land Affiliates, LLC*, 598 F. Supp. 2d at 1263 (citation omitted).  The Defendants' products are sold locally to patrons in the Delray Beach, Florida area.  (Ex. 1, ¶32).  The Defendants do not advertise outside of south Florida.  (Ex. 1, ¶31).  HAG has failed to demonstrate any degree of overlap in the parties' customer bases.  HAG claims that "foodies" travel to restaurants with unique characteristics.  However, HAG presents no evidence whatsoever that these "foodies" have travelled to HAG's restaurant or will travel to the Defendants' restaurant.  Further, these unnamed, unknown individuals may eat at HAG's restaurant if they are in the area, but there is no evidence presented that such individuals constitute Defendants' customer base.  Simply, HAG is a local restaurant located in Chandler, Arizona while the Defendants' restaurant is located 2,300 miles away in Delray Beach, Florida.  HAG has failed to establish any degree of overlap in the customer bases.

### B.   Similarity of Advertising Methods.

"The greater the similarity in advertising campaigns, the greater the likelihood of confusion."  *Ross Bicycles, Inc. v. Cycles, USA, Inc.*, 765 F.2d 1502, 1508 (11th Cir. 1985).  The Defendants do not advertise nationally.  (Ex. 1, ¶34).  The Defendants have sent out limited

advertising in the Delray Beach, Florida area.  (Ex. 1, ¶35).  Although HAG makes much of the attention it received as a result of its derogatory depiction of nurses and its highly caloric menu, HAG has failed to demonstrate what advertising efforts it is undertaking, if any.  HAG, without supplying any examples, claims to have a newsletter that it sends out.  HAG also claims a presence on the internet through its website and Facebook.  Other than these minimal efforts, HAG has failed to provide any evidence that it has advertised nationally, in Florida, or in Delray Beach, Florida.  Thus, there is no similarity of the advertising methods.

### C.   **Defendants' Intent.**

"[P]rior knowledge of a senior user's trademark does not necessarily give rise to an inference of bad faith and may be consistent with good faith."  *Michael Caruso & Co., Inc. v, Estefan Enterprises, Inc.*, 994 F. Supp. 1454, 1462 (S.D. Fla. 1998) (quotation omitted).  The Defendants do not contest that they were aware of HAG's marks.  However, the Defendants acted in good faith by intentionally selecting a name that reflected the services they market.  The Defendants chose the "Heart Stoppers Sports Grill" name to describe the nature of their services. Clearly, any patron who sees the "Heart Stoppers Sports Grill" name will understand that it is a restaurant with televisions and a bar.  Further, the menu items chosen by the Defendants are decidedly different from HAG's trademarked menu items.  The Defendants do not designate their burgers as "bypass burgers" and have an extensive menu with more than 60 items.  The Defendants do not have "flatliner fries."  The Defendants have chicken wings with the hottest sauce option being described as "flatliner."  (Ex. 3) (Ex. 5).  These items are decidedly different and describe the products sold by the Defendants.

### D.   **Actual Confusion.**

"Actual confusion may be shown in a variety of ways, including 'inquiries regarding

possible affiliations between the parties,' 'attempts to purchase goods or services actually offered by the other party,' and 'misdirected correspondence such as bills or letters.'" *Home & Land Affiliates, LLC*, 598 F. Supp. 2d at 1264 (citation omitted). "Actual identification is best proved by surveys or other quantitative proof, and, absent such data, is very difficult to prove." *Gulf Coast Commercial Corp.*, 2006 WL 1382072 at *10. HAG has failed to demonstrate actual confusion. HAG has failed to demonstrate any inquiries regarding possible affiliation between the parties. HAG has failed to demonstrate that any of its restaurant customers travelled to Delray Beach, Florida to purchase the Defendants' food products. Finally, HAG has failed to demonstrate any misdirected correspondence or letters. As discussed above, HAG's sole claim of actual confusion is based on anonymous blog statements made by unknown individuals commenting on an article relating to the Defendants' restaurant. HAG has failed to demonstrate that these anonymous posters are potential customers. "When examining the likelihood of confusion in the marketplace, a court examines only those in the relevant consumer group, not the general public." *Id.* Since these anonymous posters have not been identified as part of the relevant consumer group, any statements made by them are clearly irrelevant and unreliable. Thus, HAG has failed to establish actual confusion.

## III.   **IRREPARABLE INJURY.**

"The likelihood of success is only one factor to be considered on a motion for preliminary injunction; irreparable injury is equally important." *Buca, Inc.*, 18 F. Supp. 2d at 1211 (citation omitted). HAG has failed to establish a likelihood of consumer confusion in its weak trade dress. Any alleged irreparable injury is clearly conjectural. Other than the unidentified people who would allegedly fly to Chandler, Arizona to eat at HAG's restaurant, HAG had has not demonstrated any cross-over of potential customers. Further, since the

Defendants' restaurant maintains a different concept, there is no threat of dilution to HAG's high caloric restaurant theme.

## IV.    **BALANCE OF HARDSHIPS**.

"In considering a motion for preliminary injunction, the court must examine whether the injury to the plaintiff outweighs the harm which granting the injunctive relief would inflict on the defendant."  *Id*. at 1211 (citation omitted).  If an injunction were issued under the terms requested by HAG, the Defendants would be forced to shut down their restaurant and completely design and execute a new restaurant theme.  It would cost the Defendants at least $50,000 in expenses if they were required to remove the items, purchase new items, and close their restaurant for business during that time period.  (Ex. 1, ¶37).  If the Defendants are required to completely change their concept, they would suffer not only losses from having to purchase new restaurant items and the loss of business while they were closed, but in the event the injunction is determined to be improper, they would incur additional losses as a result of having to reconvert the restaurant.  (Ex. 1, ¶38).  HAG's proposal of posting a $10,000.00 bond is clearly inadequate and does not even address the costs that would be incurred to remove the various items and replace them with new items.  Thus, the balance of hardship weighs in favor of the Defendants.

## V.    **PUBLIC INTEREST**.

The public interest is served when "consumers are not deceived as to the source of goods purchased."  *Id*. at 1212 (citation omitted).  As discussed above, there is no likelihood of confusion between a restaurant located in Delray Beach, Florida and a restaurant located in Chandler, Arizona.  Further, HAG cannot appropriate the medically themed restaurant concept to itself to the exclusion of all others.  "It would be ludicrous to suggest that in our free enterprise system, one producer and not another is permitted to take advantage of a marketing approach to

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

enhance consumer reception of its product." *Prufrock, Ltd., Inc.*, 781 F.2d at 132.  By opening a restaurant that uses a medically related theme as its secondary theme, HAG cannot grant itself a monopoly over the theme in every state in the country.  The public interest would not be served by permitting such an expansive geographic reservation.  Thus, the public interest would not be served in this instance.

## CONCLUSION

For all the reasons set forth herein, Defendants B & I ENTERPRISES, LLC, IGNAZIO LENA and ROBERT KUTNICK respectfully submit that this Court should deny Plaintiffs HAG, LLC and JON BASSO's Motion for Preliminary Injunction and award such other and further relief as the Court may deem just and proper.

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW

Dated: February 12, 2010
      Boca Raton, Florida

Respectfully submitted,

_____
ERIC LEE (Bar No. 961299)
lee@leeamlaw.com
Lee & Amtzis, P.L.
5550 Glades Road, Suite 401
Boca Raton, FL  33431
Telephone:  (561) 981-9988
Facsimile:  (561) 981-9980
**Attorneys for Defendants**
**B & I ENTERPRISES, LLC d/b/a HEART**
**STOPPERS a/k/a HEART STOPPERS SPORTS**
**GRILL, IGNAZIO LENA and ROBERT**
**KUTNICK**

CASE NO. 10-81027-CIV-MARRA/JOHNSON

## SERVICE LIST

Kain & Associates, P.A.
Robert C. Kain, Jr., Esq.
Darren Spielman, Esq.
900 S.E. 3rd Ave., Ste. 205
Ft. Lauderdale, FL  33316

LEE & AMTZIS, P.L.
ATTORNEYS AT LAW